IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| VANESSA CLABORN-WELCH, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Case No. 17-00748-CV-W-ODS ) |
| SONNY PERDUE, Secretary,<br>Department of Agriculture, et al., | ) ) ) ) |
| Defendants. | ) |

## ORDER AND OPINION GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

Pending is Defendants' motion to dismiss. Doc. #9. Defendant's motion is granted in part, and denied in part.

## I. BACKGROUND

Plaintiff Vanessa Claborn-Welch was employed as an Information Technology Specialist with the United States Department of Agriculture's ("USDA") Risk Management Agency ("RMA") Fiscal Operation Branch in Kansas City, Missouri, from 1985 to 2002.[1] In 2000, Plaintiff was diagnosed with demantromyositis/ polymysitis, a disease that affected her immune system and caused her to suffer muscle weakness, difficulty breathing and moving, and "extreme and constant pain and anemia." Plaintiff could not work in RMA's Kansas City office because her suppressed immune system prevented her from having contact with large groups of people. Plaintiff sought, and was granted, a reasonable accommodation in September 2000 to work from home as part of the agency's Short Term Medical Flexiplace Program. According to Plaintiff, this reasonable accommodation permitted Plaintiff to telework until she was able to return to work at RMA's office, or until she retired.

---

[1] Unless otherwise noted, the facts contained in this section are from Plaintiff's complaint. Doc. #1.

In March 2001, Plaintiff was notified via letter that her approved flexible work program period had ended. The letter gave Plaintiff three options: (1) report to work at RMA's offices, (2) voluntarily quit, or (3) apply for disability retirement. Plaintiff objected to these options, and spoke with a Human Resources Specialist in Washington, D.C., who informed Plaintiff that each agency sets its own rules, and Plaintiff had to comply with those rules. Plaintiff contacted her immediate supervisor, who informed Plaintiff that she did not agree with the letter and had refused to sign it. According to the complaint, Plaintiff's immediate supervisor supported her desire to continue working. Plaintiff also contacted Defendants Lonnie Clemons and Steven Ginie, both in management roles with RMA, but was told she must quit or retire. Presented with her options, Plaintiff submitted for medical retirement, and remained in the flexible work program until her retirement was approved in February 2002.

In 2011, Plaintiff attended a funeral where she learned two Caucasian female employees who had "gone out" on the flexible work program were permitted to participate in that program until they retired. Specifically, Plaintiff's complaint alleges these employees started the flexible work program "approximately the same time as Plaintiff," but were allowed to continue working for approximately five additional years, until each retired in 2007. Plaintiff, who identifies as a black female, maintains the agency held an unyielding position regarding her accommodation and disability yet provided accommodations for Caucasian employees. Plaintiff states her immediate supervisor observed racial bias by Defendants Clemons and Ginie, both Caucasian men. Plaintiff contends agency policy regarding the flexible work program permits long term or short term participation, and an employee can stay in the program as long as they are employed if the agency supports the employee.

After being informed that Caucasian employees were permitted to participate in the flexible work program until their retirement, Plaintiff sought administrative remedies. On March 9, 2011, Plaintiff contacted an EEO counselor. Counseling was conducted, and Plaintiff received a Notice of Right to File a formal complaint on June 22, 2011. On July 6, 2011, Plaintiff filed a formal complaint. On April 5, 2012, the agency issued its decision dismissing the complaint as untimely. On April 26, 2012, Plaintiff filed an appeal with the Merit Systems Protection Board ("MSPB"). On September 28, 2012, the

MSPB dismissed Plaintiff's appeal for lack of jurisdiction. Plaintiff sought review of that decision, but the MSPB denied her petition for review. On September 24, 2013, Plaintiff requested the Equal Employment Opportunity Commission ("EEOC") review the MSPB's order. On June 11, 2014, the EEOC denied Plaintiff's request, and remanded the petition to the agency. On April 28, 2015, a final agency decision was issued. Plaintiff sought review of the final agency decision, but the EEOC denied relief. Plaintiff sought reconsideration of that decision, but the request was denied on June 9, 2017.

Following the administrative process, Plaintiff filed this matter on September 7, 2017. Plaintiff's complaint alleges: (1) failure to accommodate disability, (2) race discrimination, (3) wrongful discharge and/or constructive discharge, (4) fraud, (5) fraudulent concealment, and (6) outrageous conduct. On December 11, 2017, the Court issued an order to Plaintiff to show cause why defendants had not been served. Doc. #3. In response, Plaintiff indicated Defendant agency had been served, but individuals Ginie and Clemons had not been served.[2] Doc. #8.

Although Ginie and Clemons have not been served, all Defendants move to dismiss Plaintiff's complaint for several reasons. First, Defendants argue Ginie and Clemons should be dismissed due to Plaintiff's failure to serve them in accordance with the Federal Rules of Civil Procedure. Second, Defendants argue Plaintiff's common law claims for fraud, fraudulent concealment, and outrageous conduct should be dismissed because those claims are barred by sovereign immunity and precluded by Title VII and the Rehabilitation Act. Third, Defendants argue Plaintiff's failure to accommodate, race discrimination, and wrongful and/or constructive discharge claims should be dismissed because Plaintiff failed to timely exhaust administrative remedies. In the alternative, Defendants argue these claims are barred by the doctrine of laches.

---

[2] The response indicated Clemons may be deceased. Regarding Ginie, Plaintiff stated she only recently located him, and requested an additional thirty days to effectuate service. Plaintiff did not make a motion for additional time to serve, and repeatedly stated neither individual is indispensable to the action. Plaintiff has not filed a return of service for either individual.

## II. DISCUSSION

### A. Failure to Serve

The Court first addresses the issue of service on the individual defendants. An officer or employee of the United States sued in an individual capacity must be served in accordance with the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 4(i)(3); Fed. R. Civ. P. 4(e). In response to the motion to dismiss, Plaintiff concedes she has been unable to locate or serve Ginie and Clemons, and requests the Court dismiss Plaintiff's claims against these parties without prejudice. Accordingly, the Court dismisses without prejudice Plaintiff's claims against individuals Ginie and Clemons.

### B. Common Law Claims

The Court next addresses Plaintiff's common law claims for fraud, fraudulent concealment, and outrageous conduct. Defendant agency[3] argues these claims are barred by sovereign immunity, and precluded by Title VII and the Rehabilitation Act. In response, Plaintiff requests the claims be dismissed without prejudice. Plaintiff briefly argues these claims are not barred by sovereign immunity, or precluded by Title VII or the Rehabilitation Act, but ultimately requests dismissal of these claims without prejudice. While sovereign immunity and preclusion likely pose insurmountable obstacles to Plaintiff's common law claims, the Court finds resolution of those issues unnecessary at this time because Plaintiff concedes dismissal without prejudice of these counts. Accordingly, the Court grants Defendant's motion to dismiss in this regard, and dismisses without prejudice Plaintiff's common law claims.

### C. Title VII Claims

Finally, the Court considers Defendant agency's argument that Plaintiff's failure to accommodate, race discrimination, and wrongful and/or constructive discharge claims should be dismissed because Plaintiff failed to timely exhaust her administrative remedies. The Court understands Defendant agency to seek dismissal of these claims

---

[3] Plaintiff has sued the Secretary of the United States Department of Agriculture. Plaintiff worked in the United States Department of Agriculture's Risk Management Agency. For simplicity, the Court uses to "Defendant agency" when referencing the lone remaining Defendant.

pursuant to Federal Rule of Civil Procedure 12(b)(6) due to Plaintiff's alleged failure to state a claim due to the timeliness of her complaint.

The liberal pleading standard created by the Federal Rules of Civil Procedure requires "a short and plain statement of the claim showing that the pleader is entitled to relief." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting Fed. R. Civ. P. 8(a)(2)). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the…claim is and the grounds upon which it rests.'" *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In ruling on a motion to dismiss, the Court "must accept as true all of the complaint's factual allegations and view them in the light most favorable to the Plaintiff[ ]." *Stodghill v. Wellston Sch. Dist.*, 512 F.3d 472, 476 (8th Cir. 2008).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Id.* at 679. A claim is facially plausible if it allows the reasonable inference that the defendant is liable for the conduct alleged. *See Horras v. Am. Capital Strategies, Ltd.*, 729 F.3d 798, 801 (8th Cir. 2013); *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009).

As a federal employee bringing a discrimination claim, Plaintiff must fully exhaust her administrative remedies before the federal courts may hear her claims. *Burkett v. Glickman*, 327 F.3d 658, 660 (8th Cir. 2000). Federal regulations require Plaintiff to

initiate contact with an EEO counselor "within 45 days of the date of the matter alleged to be discriminatory" or within 45 days of an alleged discriminatory personnel action. *Id.*; *see also* 29 C.F.R. § 1614.105(a)(1). But the failure to timely initiate the administrative process is not a jurisdictional requirement to bring suit in federal court; rather it is a condition precedent which "is subject to waiver, estoppel and equitable tolling." *Lawrence v. Cooper Communities, Inc.*, 132 F.3d 447, 451 (8th Cir. 1998).

Equitable tolling may extend a deadline to timely exhaust administrative remedies where the employee, despite all due diligence, is unable to obtain vital information bearing on the existence of her claims. *Dring v. McDonnell Douglas Corp.*, 58 F.3d 1323, 1328 (8th Cir. 1995) (internal quotations and citation omitted). Equitable tolling focuses on the employee's excusable ignorance and considers whether a reasonable person in the employee's position would have been expected to know of possible discrimination. *Id.* at 1329.

While equitable tolling focuses on the employee's conduct and knowledge, equitable estoppel focuses on the employer's conduct. *Id.* Equitable estoppel presupposes plaintiff's knowledge of the existence of a cause of action, and may be invoked where the employee's failure to timely seek remedies is a consequence of a deliberate design by the employer, or the employer's actions unmistakably would cause the employee to delay filing her charge. *Id.* Plaintiff bears the burden to prove entitlement to either equitable tolling or equitable estoppel. *Jenkins v. Mabus*, 646 F.3d 1023, 1028 (8th Cir. 2011). While statutes of limitations should be extended only in exceptional circumstances, the Court is not without authority to do so when the balancing of equities weighs in favor of such relief. *Dring*, 58 F.3d at 1330.

At the motion to dismiss stage, the Court finds Plaintiff has sufficiently pled facts establishing entitlement to equitable tolling or equitable estoppel. While working with a reasonable accommodation in the agency's flexible workplace program, Plaintiff received the letter giving her the limited options of reporting to work, which she was unable to do given her disease, voluntarily quit, or apply for disability retirement. Plaintiff's complaint describes her objection to those options, and details her efforts to contact multiple supervisors and human resources contacts to protest her limited options. Plaintiff's complaint indicates she contacted the Director of Civil Rights for the

USDA/RMA, the disability coordinator, and her second and third line supervisors. Additionally, Plaintiff discussed the matter with her immediate supervisor, who indicated disagreement with how Plaintiff's employment was being handled.

In 2001 and 2002, Plaintiff diligently sought clarification of her options and the reasons she was not permitted to continue working in the flexible workplace program. According to her complaint, she received no guidance beyond being told she had to follow the decisions of her supervisors. In 2011, while attending a funeral, Plaintiff learned of two Caucasian women who allegedly participated in the flexible workplace program but were not forced to take disability retirement. Were this information known to her in 2001 or 2002, Plaintiff would have been on notice of differential treatment and potential violations of federal employment laws. However, Plaintiff has pled her ignorance of these allegedly similarly situated employees until she discovered this information in 2011. Since 2011, Plaintiff has diligently pursued administrative remedies. Reviewing these facts in the light most favorable to Plaintiff, the Court finds a plausible basis for equitable tolling. Thus, Defendant agency's motion to dismiss on this basis is denied.

The Court also finds a plausible basis for equitable estoppel on the facts as pled. As detailed above, Plaintiff contacted several management and human resources employees, but was rebuffed each time she sought to remain in the flexible workplace program with a reasonable accommodation. Additionally, Plaintiff has pled her immediate supervisor's concern about racial bias by agency managers. Considered together, Plaintiff has sufficiently pled her inability to discover information about her situation and other employees at the agency, or to seek administrative remedies. Accordingly, the Court denies Defendant agency's motion to dismiss on this basis.

Defendant agency also argues Plaintiff's claims are barred by the doctrine of laches. As Defendant agency acknowledges, the doctrine of laches is an affirmative defense involving a fact based inquiry on which Defendant agency bears the burden of persuasion. At this stage, the Court's review of Plaintiff's complaint reveals a plausible

basis for defeating such an affirmative defense. Accordingly, Defendant agency's motion to dismiss on the basis of laches is denied.[4]

### III. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is granted in part, and denied in part. Plaintiff's claims against all defendants for fraud, fraudulent concealment, and outrageous conduct are dismissed without prejudice. Plaintiff's Title VII claims remain pending.

IT IS SO ORDERED.

DATE: April 27, 2018

/s/ Ortrie D. Smith
ORTRIE D. SMITH, SENIOR JUDGE
UNITED STATES DISTRICT COURT

---

[4] Defendant agency also cites several exhibits related to the underlying administrative process. Defendant agency notes an affidavit from Plaintiff indicates she participated in the agency's EEO/Civil Rights program as a Special Emphasis Program Manager. Drawing on this information, Defendant agency concludes Plaintiff knew all of her rights and could have exercised them accordingly. The Court declines to rely on this limited factual record to dismiss Plaintiff's complaint in its entirety at this early stage of the proceedings when the parties have conducted no discovery.