IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| VANESSA CLABORN-WELCH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 17-00748-CV-W-ODS |
| | ) | |
| SONNY PERDUE, Secretary, | ) | |
| Department of Agriculture, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER AND OPINION GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Pending is Defendant's motion for summary judgment. Doc. #58. For the following reasons, Defendant's motion is granted in part and denied in part.

### I. BACKGROUND[1]

Plaintiff Vanessa Claborn-Welch was employed as an Information Technology Specialist with the United States Department of Agriculture's ("USDA") Risk Management Agency ("RMA") Fiscal Operation Branch in Kansas City, Missouri, from 1985 to 2002. In 2000, Plaintiff was diagnosed with demantromyositis/polymysitis, which, among other things, affected her immune system, caused muscle weakness, impacted her ability to breathe and move, made it difficult to breathe and move, and resulted in "extreme and constant pain." Plaintiff could not work in RMA's Kansas City office because her suppressed immune system prevented her from having contact with large groups of people. Plaintiff requested, and was granted, an accommodation to work from home as part of RMA's Short Term Medical Flexiplace Program, beginning on October 2, 2000. The reasonable accommodation was to remain in effect for six months unless Plaintiff was able to return to the workplace earlier.

In March 29, 2001, Lonnie Clemons, the Fiscal Systems Branch Chief, sent a letter to Plaintiff notifying her that the approved flexible work program period ended the next day. The letter required Plaintiff to report to work or contact Nicole White, the

---
[1] Unless otherwise noted, the facts in this section are uncontroverted by the parties.

Disability Employment Manager, to discuss the possibility of an additional accommodation and/or disability retirement. Plaintiff's immediate supervisor disagreed with the letter, refused to sign it, and supported Plaintiff's desire to continue working. Plaintiff alleges that she contacted White after receiving the letter, but White does not recall any contact by or conversation with Plaintiff.

On July 30, 2001, Plaintiff applied for disability insurance benefits under the Social Security Act. Plaintiff claimed she became unable to work beginning on January 27, 2001, because of her disabling condition. On August 29, 2001, Plaintiff advised Steve Ginie, a second level supervisor, that she planned to file for disability retirement on September 10, 2001.[2] On September 10, 2001, Plaintiff's accommodation plan was modified and extended from September 9, 2001, through March 7, 2002.[3] On October 30, 2001, Plaintiff's annual performance appraisal indicated she was "fully successful." Plaintiff applied and was approved for disability retirement effective February 23, 2002.

In 2011, Plaintiff, while attending a funeral, learned two Caucasian female employees at RMA started the flexible work program around the time Plaintiff did. But, unlike Plaintiff, these two employees were allowed to continue working under the flexible work program for approximately five additional years, until retiring in 2007. RMA's flexible work program permits long term or short-term participation, and employees can stay in the program as long as they are employed if the agency supports the employee.

On March 9, 2011, Plaintiff contacted an EEO counselor. Counseling was conducted, and Plaintiff received a Notice of Right to File a formal complaint on June 22, 2011. On July 6, 2011, Plaintiff filed a formal complaint. On April 5, 2012, Plaintiff's Complaint was dismissed as untimely. On April 26, 2012, Plaintiff filed an appeal with the Merit Systems Protection Board ("MSPB"). On September 28, 2012, the MSPB dismissed the appeal for lack of jurisdiction. Plaintiff sought review of that decision, but the MSPB denied her request. On September 24, 2013, Plaintiff requested the Equal

---

[2] According to Plaintiff, Ginie pushed for her to retire, but she did not want to retire. Doc. #63, at 12.
[3] Plaintiff alleges there was no agreement and she signed the modification under duress. Doc. #63, at 13. In support, Plaintiff cites her April 2001 letter to her supervisors and others advocating to remain at USDA/RMA as she was a valuable employee. Doc. #63-17.

2

Employment Opportunity Commission ("EEOC") review the MSPB's decision. On June 11, 2014, the EEOC denied Plaintiff's request and remanded the petition to the USDA. On April 28, 2015, the USDA issued a final agency decision. Plaintiff asked the EEOC to review the decision, but the EEOC denied her request. Plaintiff unsuccessfully sought reconsideration of that decision.

Plaintiff filed this matter on September 7, 2017, alleging: (1) failure to accommodate, (2) race discrimination, (3) wrongful discharge and/or constructive discharge, (4) fraud, (5) fraudulent concealment, and (6) outrageous conduct. Doc. #1. In January 2018, Defendants filed a motion to dismiss. Doc. #9. The Court dismissed all of Plaintiff's claims against Defendants Lonnie Clemons and Steven Ginie, and also dismissed Plaintiff's fraud, fraudulent concealment, and outrageous conduct claims against Defendant agency. Doc. #26. Plaintiff's failure to accommodate, race discrimination, and wrongful discharge and/or constructive discharge claims remain pending against Defendant USDA. Defendant seeks summary judgment on Plaintiff's remaining claims. Doc. #58.

## II. STANDARD

A moving party is entitled to summary judgment on a claim only if there is a showing that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Williams v. City of St. Louis*, 783 F.2d 114, 115 (8th Cir. 1986). "[W]hile the materiality determination rests on the substantive law, it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Thus, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Wierman v. Casey's Gen. Stores*, 638 F.3d 984, 993 (8th Cir. 2011) (quotation omitted). Inadmissible evidence may not be used to support or defeat a motion for summary judgment. *Brooks v. Tri-Sys., Inc.*, 425 F.3d 1109, 1111 (8th Cir. 2005) (citation omitted). The Court must view the evidence in the light most favorable to the non-moving party, giving that party the benefit of all inferences that may be reasonably drawn from the evidence. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 588-89 (1986); *Tyler v. Harper*, 744 F.2d 653, 655 (8th Cir. 1984). "[A] nonmovant

may not rest upon mere denials or allegations, but must instead set forth specific facts sufficient to raise a genuine issue for trial." *Nationwide Prop. & Cas. Ins. Co. v. Faircloth*, 845 F.3d 378, 382 (8th Cir. 2016) (citations omitted).

### III. DISCUSSION
#### A. Failure to Exhaust Administrative Remedies

Defendant argues Plaintiff's claims should be dismissed because she failed to timely exhaust her administrative remedies. As a federal employee bringing a discrimination claim, Plaintiff must fully exhaust her administrative remedies before the federal courts may hear her claims. *Burkett v. Glickman*, 327 F.3d 658, 660 (8th Cir. 2000). Federal regulations require Plaintiff to initiate contact with an EEO counselor "within 45 days of the date of the matter alleged to be discriminatory" or within 45 days of an alleged discriminatory personnel action. *Id.*; *see also* 29 C.F.R. § 1614.105(a)(1). But the failure to timely initiate the administrative process is not a jurisdictional requirement to bring suit in federal court; rather, it is a condition precedent which "is subject to waiver, estoppel and equitable tolling." *Lawrence v. Cooper Communities, Inc.*, 132 F.3d 447, 451 (8th Cir. 1998).

Defendant argues Plaintiff failed to timely consult an EEO counselor and her EEO complaint was at least nine years late. It further argues Plaintiff was aware of the EEO process, the statutory time limits, and knew how to contact an EEO counselor. Plaintiff opposes the motion arguing she exercised reasonable diligence by investigating the matter in 2001 and 2002 by communicating with managers and the civil rights office. According to Plaintiff, she was told USDA/RMA's policy did not allow her additional time under the Medical Flexiplace Program. She contends she did not discover Caucasian women were treated more favorably than she was until 2011, while attending a former co-worker's funeral. Plaintiff maintains she had no way to investigate whether others were permitted additional time to work from home because that information is confidential. She alleges RMA has a history of discrimination toward African Americans, but that alleged knowledge did not alert her to RMA using the Medical Flexiplace Program in a discriminatory way.

Equitable tolling may extend a deadline to timely exhaust administrative remedies where "the plaintiff, despite all due diligence, is unable to obtain vital

information bearing on the existence of his claims." *Dring v. McDonnell Douglas Corp.*, 58 F.3d 1323, 1328 (8th Cir. 1995) (internal quotations and citation omitted). Equitable tolling focuses on the employee's "excusable ignorance" and considers whether a "reasonable person" in the employee's position would have been expected to know of possible discrimination. *Id.* at 1329 (citation omitted).

Viewing the record in the light most favorable to Plaintiff, the Court finds Plaintiff exercised reasonable diligence by investigating the matter in 2001 and 2002 when she contacted the Director of Civil Rights for the USDA/RMA, the USDA disability coordinator, and her second and third line supervisors. Additionally, Plaintiff discussed the matter with her immediate supervisor, who indicated disagreement with how Plaintiff's employment was being handled. Plaintiff had no way of knowing whether others were utilizing the flexible workplace program because that information is confidential. Plaintiff had no apparent facts upon which she could file a complaint regarding USDA's alleged failure to accommodate or race discrimination. Since 2011, when she discovered other employees were allegedly treated more favorably, Plaintiff diligently pursued administrative remedies. Reviewing the evidence in the light most favorable to Plaintiff, the Court finds Plaintiff's exhaustion requirements are equitably tolled. Thus, Defendant's motion for summary judgment on this basis is denied. Because the Court finds equitable tolling applies, there is no need to address Plaintiff's alternative argument of equitable estoppel.

### B. Doctrine of Laches

Defendant also argues Plaintiff's claims are barred by the doctrine of laches. The doctrine of laches is an affirmative defense involving a fact-based inquiry on which Defendant bears the burden of persuasion. *Whitfield v. Anheuser-Busch, Inc.*, 820 F.2d 243, 244-45 (8th Cir. 1987) (citations omitted). The doctrine of laches "may be used to bar a lawsuit when the plaintiff is guilty of (1) unreasonable and unexcused delay, (2) resulting in prejudice to the defendant." *Id.* at 244 (citations omitted).

Because nine years had passed since Plaintiff retired, Defendant was unable to obtain information from individuals involved. In 2011, when the investigation into Plaintiff's claims began, Plaintiff's supervisors had retired and were unavailable for interviews. Defendant also argues Plaintiff's memory is flawed and witnesses have little

5

or no memory of Plaintiff's situation. According to Defendant, the Office of Personnel Management had a file but there are no phone records or emails. While these arguments concern the alleged prejudice, Defendant does not point to anything showing Plaintiff is guilty of unreasonable and unexcused delay.

Based on the record before it, Defendant did not satisfy its burden of establishing the defense of laches. Given the passage of time between Plaintiff's disability retirement and the filing of an administrative complaint, there was certainly a delay. But whether the delay was unreasonable and inexcusable remains unclear. While equitable defenses are not tried to a jury, the Court "may try any issue with an advisory jury." Fed. R. Civ. P. 39(c)(1). Defendant shall present its laches defense at trial to the jury for an advisory verdict. *See Bombardier Recreational Prod., Inc. v. Arctic Cat Inc.*, No. CV 12-2706 (JRT/LIB), 2017 WL 5256741, at *2 (D. Minn. Nov. 11, 2017); *Pioneer Hi-Bred Int'l, Inc. v. Ottawa Plant Food, Inc.*, 219 F.R.D. 135, 149 (N.D. Iowa 2003). In this regard, the parties are encouraged to propose jury instructions and/or jury interrogatories for the purpose of obtaining an advisory verdict on the laches defense.

### C. Failure to Accommodate Claim

Defendant moves for summary judgment on Plaintiff's failure to accommodate claim. An employer is required to collaborate with employees to address accommodation requests under the Rehabilitation Act. 29 C.F.R. § 1630.9(a). However, the employee "bears the initial burden of demonstrating that [s]he requested reasonable accommodations, and that those accommodations would render h[er] otherwise qualified for" her job. *Mershon v. St. Louis Univ.*, 442 F.3d 1069, 1077 (8th Cir. 2006); *see also EEOC v. Convergys Customer Mgmt. Grp, Inc.*, 491 F.3d 790, 795 (8th Cir. 2007). Reasonable accommodation claims are evaluated under a modified burden-shifting analysis. *Peebles v. Potter*, 354 F.3d 761, 766 (8th Cir. 2004). Employers are required "to modify their work requirements to enable disabled individuals to have the same opportunities as their non-disabled counterparts." *Id.* at 767 (citation omitted). "[D]iscrimination occurs when the employer fails to abide by a legally imposed duty." *Id.* "The known disability triggers the duty to reasonably accommodate and, if the employer fails to fulfill the duty, we do not care if [the employer] was motivated by the disability." *Id.* (citations omitted).

6

To establish a prima facie case for failure to accommodate, Plaintiff must show (1) the employer knew she was disabled, (2) she requested an accommodation, (3) Defendant did not make good faith attempts to assist her in seeking the accommodation, and (4) Defendant could have reasonably accommodated her. *See Cravens v. Blue Cross & Blue Shield of Kan. City*, 214 F.3d 1011, 1021 (8th Cir. 2000); *Didier v. Schwan Food Co.*, 465 F.3d 838, 841(8th Cir. 2006).[4] "Under the Act and its regulations, such discrimination occurs if 'a covered entity [does] not . . . make reasonable accommodation to the known physical or mental limitations of an otherwise qualified applicant or employee with a disability, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of its business.'" *Peebles*, 354 F.3d at 766. "[T]he plaintiff's burden, upon a defendant's motion for summary judgment, is only to show that the requested accommodation is 'reasonable on its face….'" *Id.*

Defendant argues both the original and modified accommodation plans, to which Plaintiff agreed, were reasonable. It contends there is no evidence that Plaintiff would have been denied a reasonable accommodation of her medical condition if she had not sought disability retirement. Defendant further alleges Plaintiff cannot claim to be a qualified individual with a disability because she applied for disability benefits, stating she was "too ill to work."

Plaintiff argues she was "otherwise qualified" because her performance evaluations established she was an outstanding employee. Plaintiff claims her request to continue working from home, as she had been doing for a year and a half, was reasonable on its face. She claims she established an available remedy because she had been successful working from home and Defendant had already paid the expenses related to it. She argues Defendant cannot establish the accommodation would create an undue burden because it accommodated two Caucasian females in the exact same manner for many years. Regarding her application for disability benefits, Plaintiff maintains she did not represent she was completely disabled until after Defendant told her the accommodations were ending and would not be renewed. Plaintiff argues, without the accommodations, she was too ill to work.

---

[4] "Rehabilitation Act claims and claims under the ADA are evaluated the same; thus, cases dealing with each are interchangeable." *Peebles*, 354 F.3d at 766.

7

The accommodation plan permitted Plaintiff to work at home with specialized equipment and complete eight hours of work over a twelve-hour period. The plan commenced on May 6, 2001, and was set to conclude on September 8, 2001. On July 30, 2001, Plaintiff applied for Social Security disability benefits claiming she was unable to work because of her disability. On August 29, 2001, Plaintiff told a second level supervisor that she was going to file for disability retirement. On September 10, 2001, Plaintiff completed a Statement of Disability in connection with her request for disability retirement. Therein, Plaintiff included her accommodation request and stated Defendant granted her request, but she was now "to ill to work." Doc. #58-22.

After Plaintiff began the process of applying for disability retirement, the accommodation plan was extended through March 7, 2002, but would end sooner if her disability retirement application was approved before March 7, 2002. Plaintiff argues she signed the plan modification under duress and did not want to retire. Defendant argues Plaintiff's request for disability retirement was voluntary, she was reasonably accommodated until her request for disability retirement was granted, and Plaintiff would have been reasonably accommodated if she requested further accommodation or her request for disability retirement was denied.

The Court finds a genuine factual dispute exists as to Plaintiff's failure to accommodate claim. Therefore, summary judgment on this claim is denied.

### D. Race Discrimination Claim

Defendant moves for summary judgment on Plaintiff's race discrimination claim. Absent direct evidence of discrimination, a plaintiff establishes a prima facie case of discrimination by showing (1) she is a member of a protected group; (2) she was meeting the legitimate expectations of her employer; (3) she suffered an adverse employment action; and (4) circumstances give rise to an inference of discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973); *Bunch v. Univ. of Ark. Bd. of Trs.*, 863 F.3d 1062, 1068 (8th Cir. 2017) (citation omitted).

Regarding the fourth element, which is at issue in this matter, similarly situated individuals being treated more favorably may give rise to an inference of discrimination. *Id.* The test for determining whether an employee can be compared is "rigorous and requires that the other employees be similarly situated in all relevant aspects before the

plaintiff can introduce evidence comparing herself to the other employees." *Fields v. Shelter Mut. Ins. Co.*, 520 F.3d 859, 864 (8th Cir. 2008). A comparator typically "must have dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances." *Gilmore v. AT&T*, 319 F.3d 1042, 1046 (8th Cir. 2003). However, "[t]he similarly situated co-worker inquiry is a search for a substantially similar employee, not for a clone." *Doucette v. Morrison Cty., Minn.*, 763 F.3d 978, 984 (8th Cir. 2014) (citing *Ridout v. JBS USA, LLC*, 716 F.3d 1079, 1085 (8th Cir. 2013)).

Defendant argues that although Plaintiff alleges other employees were treated differently, there is no evidence that employees were comparable to Plaintiff or were treated differently. Plaintiff cites the February 2007 Accommodation Plan for Louise Narber as evidence of a similarly situated employee being treated differently. Doc. #58-39. The RMA found both Plaintiff and Narber were entitled to reasonable accommodation of teleworking from home. However, Narber worked in a different division, had a different supervisor, and a different accommodation coordinator. Additionally, it is unclear if Defendant's policies or programs remained unchanged from 2001, when Plaintiff sought and was granted a reasonable accommodation, and 2007, when Narber was granted a reasonable accommodation. Moreover, the circumstances surrounding Narber's accommodation request(s) are unknown. Based on the record before it, Plaintiff has not demonstrated Narber is similarly situated to her. Although she argues another Caucasian employee was treated more favorably, Plaintiff did not provide the accommodation plan or other information about the other employee.

Plaintiff has failed to present evidence that she was treated differently than the two Caucasian employees. Plaintiff argues her first and second line supervisors had a history of treating black employees differently than white employees. She also avers Defendant allowing Caucasian employees to continue in medical flexiplace and not her establishes a causal connection between the racial animus and the adverse employment action. However, Plaintiff does not present any evidence to support these allegations, and she fails to present evidence of circumstances that give rise to an inference of race discrimination. *McDonnell Douglas*, 411 U.S. at 802-03. Therefore, Defendant's motion for summary judgment on Plaintiff's claims of race discrimination is granted.

### E. Constructive Discharge Claim

"Constructive discharge occurs when an employer deliberately renders the employee's working conditions intolerable, thereby forcing her to quit." *Wright v. Rolette Cty.*, 417 F.3d 879, 886 (8th Cir. 2005) (citation omitted). To prove constructive discharge, Plaintiff "must establish [Defendant] deliberately made or allowed [her] working conditions 'to become so intolerable that [she] had no other choice but to quit.'"[5] *Jones v. Fitzgerald*, 285 F.3d 705, 715-16 (8th Cir. 2002) (citation omitted).

Defendant argues Plaintiff's working conditions were not intolerable, and Plaintiff made no complaint of harassment. Plaintiff argues she was not given any "real choices"; her only options were quitting, being terminated, or taking disability retirement.

The Court finds a genuine factual dispute exists as to whether Plaintiff was constructively discharged. Therefore, summary judgment on this claim is denied.

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is granted with regard to Plaintiff's race discrimination claim, but Defendant's motion for summary judgment is denied with regard to Plaintiff's failure to accommodate and constructive discharge claims.

IT IS SO ORDERED.

DATE: February 18, 2020

/s/ Ortrie D. Smith
ORTRIE D. SMITH, SENIOR JUDGE
UNITED STATES DISTRICT COURT

---

[5] If a plaintiff cannot show his employer "consciously intended" for her to quit, she "can still prevail on a constructive discharge claim if 'the employer…could have reasonably foreseen that the employee would [quit] as a result of its actions.'" *Wright*, 417 F.3d at 886 (citation omitted).